REC'D IN PRO SE OFFICE
OCT 2 '24 PM 1:25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

VICTOR JORDAN

       PLAINTIFF

       V.

NYC DEPARTMENT OF EDUCATION,
UNITED FEDERATION OF TEACHERS,
TEACHERS' RETIREMENT SYSTEM, and
SANDRA MARCH, UFT Representative,
TRS Trustee, in her individual and
official Capacity.

       DEFENDANTS

_____

CIVIL ACTION NO:


COMPLAINT

JURY TRIAL
DEMANDED

**24-cv-6969-LDH-JRC**

Plaintiff, VICTOR JORDAN, as and for his complaint against defendants, the NEW YORK CITY DEPARTMENT OF EDUCATION (NYCDOE), the UNITED FEDERATION OF TEACHERS (UFT), and the Teachers' Retirement System alleges as follows:

## NATURE OF THE ACTION

1. This is an action for compensatory damages, proximately caused by Defendants' ongoing and continuous violation of Plaintiff's rights as guaranteed by 42 U.S.C. §§ 2000e et seq., (hereafter "TITLE VII"), 42 U.S.C. § 1981 (hereafter "Sec. 1981"), 42 U.S.C. § 1983 (hereafter "Sec. 1983"), Administrate Code of the City of New York § 8-101 et seq., § 8-107(15) and § 8-502 et. seq., (hereafter "the NYCHRL" or "the Code"), New York State Executive Law § 296 et sq., (the "New York State Law, hereafter "NYSHRL"), Truth in Lending Act §§ 15 U.S.C. 1601 et seq., Contract Law, and the First Amend, U.S. Constitution.

## JURISDICTION AND VENUE

2. Jurisdiction over this action is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over plaintiff's TITLE VII, ADA, the Code, NYSHRL and NYCHRL pursuant to the exhaustion of plaintiff's administrative remedies through complaints filed with both the United State Equal Employment Opportunity Commission ("EEOC") and the New York City Commission on Human Rights ("NYCCHR").

1

3.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form a part of the same case or controversy between plaintiff and defendants, and plaintiff claims stem from a common nucleus of operative facts.

4     Venue properly lies in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391 et seq.

## FACTUAL AND GENERAL ALLEGATIONS

### Plaintiff's Background

5.     Plaintiff Victor Jordan ("Plaintiff" or "Mr. Jordan") is a certified licensed high school mathematics teacher who was employed by the New York City Department of Education (NYCDOE). Mr. Jordan was appointment to a New York City high school on February 1, 1984 and completed all the conditions for his license to teach in New York City on February 1, 1986. Mr. Jordan qualifies as a NYCDOE "employee" as that term is defined in Title VII, Sec. 1983, the ADA, the Code, the NYSHRL and NYCHRL.

6.     Plaintiff began his career at the NYCDOE in the early 1980s as a substitute teacher with a Temporary Per Diem high school mathematics teaching license issued by the NYC Board of Education, now the NYCDOE. While working as a substitute teacher, the Plaintiff completed the additional coursework, passed the high school mathematics teachers examination, and passed the interview required to obtain his Math Day High School Teaching license.

7.     On February 1, 1985, after completing the required courses, passing the High School Mathematics Teachers Exam, and successfully passing the interview sections, the Plaintiff was appointed to Erasmus Hall High School in the Flatbush Section of Brooklyn, New York. Shortly thereafter, the plaintiff was awarded as a permanent Math Day High School license by the NYC Board of Education, now the NYCDOE.

8.     Erasmus Hall High School is located in a low income neighborhood comprised of a large percentage of immigrants from the Caribbean facing many of the challenges that one face when they arrived in a new country. The plaintiff did his best to get these students integrated into the Flatbush Community. As an after school project, the plaintiff organized a chess club so that students would have something constructive to do after school.

2

9.    Throughout his tenure at Erasmus Hall High School, Mr. Jordan had a consistent practice of arriving to work at 7:00 a.m. each day to prepare his classroom and his lesson plans for the arrival of his students. The mandated school day starts no earlier than 8:00 a.m. and ends no later than 4:00 p.m., with six hours and 20 minutes school day each day, Monday through Friday.

10.    Mr. Jordan's in-class practice have been both praised as well as adopted by other teachers at Erasmus Hall High School. Mr. Jordan has developed and implemented best strategies for his student's individual instructional levels. He maintained what is equivalent to a highly effective rating as a teacher and has received multiple letters from parents over the years regarding his success stories, thanking him for the progress that he has cultivated and inspired in his students. Plaintiff holds high expectations for all of his students, and he makes sure that each and every one of his students learns to his/her full potential. Plaintiff helps his students not only academically, but also to become independent individuals.

### The Black & Latino Caucus of the UFT Delegate Assembly

11.    The plaintiff was also very active in his union the UFT and his colleagues at Erasmus Hall High School elected him to represent them in the UFT's Delegate Assembly.

12.    In early 1990, a group of black and Latino teachers approached the plaintiff about forming a Black & Latino Caucus in the UFT Delegate Assembly in the same way that the Black and Puerto Rican Caucus existed in the New York State Legislature. Mr. Jordan was elected as the Co-Chair of this Caucus.

13.    As Co-Chair of the Black & Latino Caucus of the UFT's Delegate Assembly, the plaintiff had a duty "call out" defendant UFT in areas where the defendant had a blind spot to to areas of concern to minority teachers and also to encourage the defendant UFT to provide the same degree of care and representation to its black and Latino members as the defendants was providing to its Caucasian members.

14.    Upon information and belief, defendant UFT and defendant NYCDOE did not welcome the participation of the plaintiff in this Black & Latino Caucus within the Delegate Assembly of the UFT. The plaintiff was the only African American member of the Black & Latino Caucus at Erasmus Hall High School. As a result the Assistant Principal and the Principal began to harass the Plaintiff because the plaintiff was African American and because the Plaintiff was involved in the Black & Latino Caucus of the Delegate Assembly.

3

15. Whereas before Mr. Jordan's involvement with the Black & Latino Caucus (of the UFT), he received excellent classroom observations, after Mr. Jordan's involvement with the Black & Latino Caucus, he began to receive unsatisfactory observation from the Assistant Principal and the Principal of the high school.

16. Whereas before Mr. Jordan's involvement with the Black & Latino Caucus (of the UFT), he received a fair share of the available per session jobs to earn additional compensation beyond his regular salary, after Mr. Jordan's involvement with the Black & Latino Caucus, other teachers with less seniority than him began to receive per session employment that he previously received.

17. Upon information and belief, Mr. Jordan received unfair and bias classroom observation and Mr. Jordan was denied per session jobs, which he was qualified to receive based on his seniority because the NYCDOE and the UFT discriminated against him because of his race and because of his involvement in the Black and Latino Caucus of the UFT.

18. The Plaintiff filed a grievance against the Administration of Erasmus Hall High School, which did not stop the bias and discriminatory treatment received from the Erasmus Hall Administration for his involvement with the Black & Latino Caucus of the UFT.

19. In the early 1990s, the plaintiff filed a charge of discriminatory treatment against the NYCDOE with the Equal Employment Opportunity Commission (EEOC). However, the harassment and discriminatory treatment and racial animus continued. Mr. Jordan became the only teacher in the Math Department who received unsatisfactory observation reports.

20. Upon information and belief, as an African American, the UFT did not provide him with the same representation at the grievance hearing as it provided to Caucasian teachers because the UFT did not approve of his involvement with the Black and Latino Caucus as an African American in the Delegate Assembly of the UFT.

21. Upon information and belief, Mr. Jordan's depression and anxiety were in large part caused by him being subjected to disparate treatment and harassment in the workplace because he was the only black teacher actively involved in the Black and Latino Caucus of the UFT. As a member of the Caucus, the plaintiff tried to highlight problems that black member of the UFT faced as a minority group, which compounded the animus the plaintiff faced in the workplace as an African American.

4

22. Plaintiff's Caucasian colleagues often refused to communicate with him or to engage in the type of collegial behavior typically afforded to other Caucasian teachers.

23. Plaintiff was the subject of concerted gossip campaigns and outright slander by his Caucasian peers, who falsely accused him of professional misconduct and speaking out of turn. Plaintiff was excluded from workplace events by his Caucasian co-workers. Plaintiff was denied teaching benefits afforded to his Caucasian co-workers, including per session opportunities.

24. Upon information and belief, Defendants lacked empathy and have no regard for plaintiff, his rights, or his health, because he is an African American man, who is representing African American teachers and other teachers in the Black & Latino Caucus of the UFT Delegate Assembly.

## Line of Duty Injury

25. Upon information and belief, Mr. Jordan's line of duty injury to his back in the Spring 1994 were in part caused by him being subjected to disparate treatment and harassment in the workplace, as the only African American man actively involved in the Black and Latino Caucus of the UFT Delegate Assembly.

26. At all times relevant to the complaint, defendants have continuously treated Mr. Jordan differently than similarly situated Caucasian teachers by inconsistently and discriminatorily applying workplace rules.

27. The plaintiff sustained a back injury from a fall while at work. The injury to his back made it very painful for the plaintiff to stand or sit for long periods of time. In addition, the plaintiff was required to take medication to lessen the pain. This medication in turn made the plaintiff very drowsy and this affected his ability to teach his classes. The excruciating back pain coupled with side effects of the medication made it almost impossible for the plaintiff to do his job. Thus, after struggling with the pain from the injury for a number of months before the plaintiff applied for a disability retirement.

28. Plaintiff's application for disability retirement was denied by the Teachers' Retirement System (TRS) on June 8, 1998.

29. In January of 2010, after an extended medical leave for treatment for back injury that plaintiff suffered in 1994, Mr. Jordan accepted a teaching position at W.E.B. DuBois Academic High School. On the first day of classes, plaintiff appeared to begin his teaching assignment, but he was informed that the Human Resources Department of the NYCDOE did not

approve his appointment. Plaintiff called defendant UFT to help him to resolve the matter but defendants refuse to provide any assistance.

### Plaintiff Forced to Take Early Retirement

30.    In June 2011 Plaintiff was forced to file for early retirement because the defendants would not allow him to return to his job. In addition, the defendants took almost six years to process Mr. Jordan's retirement application.

31.    After the plaintiff provided almost 20 years of service to the NYCDOE, the defendant TRS awarded the plaintiff a pension in the amount of $268.50 per month.

32.    Plaintiff contacted defendant Sandra March, the UFT Trustee on the TRS Board, to inform her that the Plaintiff was being forced to retire early and that the plaintiff was not being given the correct pension. Defendant Sandra March showed no interest in helping the plaintiff to resolve the matter and failed to even acknowledge the Plaintiff.

33.    Upon information and belief, the (1) the annual Loan Reduction of $2,866.16 each year should be disallowed because it is in violation of the Truth in Lending Act (TILA) because the plaintiff was not informed of this when he took out the loan, (2) the annual Early retirement reduction of $3,231.96 should not be granted because the defendants forced the plaintiff to take an early retirement, and (3) the annual Retirement option reduction of $345.87 should be disallowed because it lacks any rational justification.

34.    Upon information and belief, the defendant UFT refused to address the plaintiff's pension problem because the defendants were retaliating against the plaintiff for his involvement, as an African American teacher, in the Black & Latino Caucus of the UFT Delegate Assembly and for filing an EEOC complaint.

### Defendant UFT Retaliation Continues to the Present Day

35.    Upon information and belief, defendant UFT racial discriminatory and retaliatory 'dirty tricks' continues to this very day with defendant, Yasmin Colon, UFT Election Coordinator, unauthorized change of the plaintiff's address to prevent him from receiving a ballot to vote in a number of competitive union elections, which is in retaliation for plaintiff filing the EEOC complaint in 1994 and for filing the second EEOC complaint in 2024.

36.    Upon information and belief, defendant UFT racial discriminatory and retaliatory behavior continues to this very day with defendant, plaintiff joined the Retired Teachers Chapter (RTC) of the UFT and on numerous occasions plaintiff signed up with a number of different email address to be notified of the meetings of the RTC Chapter of the UFT, despite the plaintiff's pleas, defendant UFT would not provide him with notices of the meetings, all in retaliation for plaintiff's role in the formation and operation of the Black & Latino Caucus of the UFT Delegate Assembly and plaintiff's filing the EEOC complaint in 1994.

37.    Pursuant to the ADA, the NYSHRL, and the NYCHRL, Mr. Jordan is perceived by the defendants as an individual with a disability. After the denial of Mr. Jordan's disability Retirement Application, the defendants' perception of Mr. Jordan's disability status was not in dispute.

38.    On April 18, 2022, the NYCDOE's Office of Teacher Recruitment & Quality confirmed that the plaintiff Math Day High School teaching license was valid to teach in the New York City Public Schools.

39.    On August 10, 2022, after undergoing an interview, plaintiff was nominated for the position of a high school mathematics teacher at the Bronx Metropolitan High School.

40.    Plaintiff's paperwork was sent to the NYCDOE's Human Resources Department for processing. However, Yissel Martinez, Director, Human Resources, NYDOE, rejected Plaintiff's application even though she was informed by the NYCDOE's Office of Teacher Recruitment & Quality that the plaintiff's Mathematics teaching license was valid in New York City.

41.    On August 31, 2022, after undergoing an interview, plaintiff was again nominated for the position of a high school mathematics teacher at the Bronx Wings Academy high school.

42.    Once again, Plaintiff's paperwork was sent to the NYCDOE's Human Resources Department for processing. However, Yissel Martinez, Director, Human Resources, NYDOE, rejected Plaintiff's application even though she was informed by the NYCDOE's Office of Teacher Recruitment & Quality that the plaintiff's Mathematics teaching license was valid in New York City.

43.    Upon information and belief, each of the rejection is specifically intended to harass and annoy plaintiff and to deprive plaintiff of his dignity, health, livelihood, professional reputation, and ultimately his employment with the NYCDOE.

7

44. On September 8, 2022, Plaintiff was directed contacted Miriam Quiles of the UFT for help to get my job back, but once again the defendants discriminated, retaliated and obfuscated and did nothing to help the plaintiff to get his job back.

45. On information and belief, defendant UFT's inconsistent and discriminatory application of teacher certification rules are intentional retaliation against plaintiff's participation in the Black & Latino Caucus of the UFT as an African American teacher.

46. Plaintiff believes in good faith that defendants' conduct towards him is racially discriminatory in violation of his rights under Title VII, discriminatory against him on the basis of his perceived disability, and retaliatory against him on the basis of plaintiff having pursued his rights by the filing of an EEOC compliant in 1994.

## CLAIMS FOR RELIEF

### AS FOR THE FIRST CAUSE OF ACTION

DEFENDANTS UNLAWFUL RACE DISCRIMINATION
UNDER SEC. 1981 AND SEC. 1983

47. Plaintiff repeats and alleges each and every one of the allegations contained in paragraph "1" through "46" as if fully set forth herein.

48. Defendants willfully and intentionally subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about race discrimination against him, including Mr. Jordan having filed numerous race discrimination grievances against defendant NYCDOE and public race discrimination complaints against the UFT when plaintiff was Co-Chair of the Black and Latino Caucus of the UFT's Delegate Assembly and defendants conduct is in violation of Sec. 1981.

49. Defendants willfully and intentionally subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about race discrimination, upon Mr. Jordan having brought administrative action upon which the instant complaint is based.

50. Plaintiff's right to be free and secure in his person from unlawful retaliation by the defendants herein is secured under Sec. 1981 and secured under Sec. 1983, and the defendants were acting "under color of state law" when they engaged in the unlawful retaliation alleged herein.

51.    Plaintiff has been materially damaged by defendants' discriminatory conduct, which has impacted plaintiff's dignity, rights, reputation, health, and livelihood, causing the plaintiff extreme humiliation, fear, shame, anxiety, hair loss, nausea, and insomnia.

## AS FOR THE SECOND CAUSE OF ACTION

### DEFENDANTS UNLAWFUL RETALIATION AGAINST PLAINTIFF FOR COMPLAINING AND REPORTING UNLAWFUL RACE DISCRIMINATION UNDER TITLE VII

52.    Plaintiff repeats and alleges each and every one of the allegations contained in paragraph "1" through "51" as if fully set forth herein.

53.    Defendants willfully and intentionally subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about race discrimination against him, including Mr. Jordan having filed race discrimination grievances against defendant NYCDOE and race discrimination complaints against the UFT when plaintiff was an elected delegate to the UFT Delegate Assembly and plaintiff was also the Co-Chair of the Black and Latino Caucus of the UFT's Delegate Assembly and defendants conduct is in violation of TITLE VII.

54.    Plaintiff has been materially damaged by defendants' discriminatory conduct, which has impacted plaintiff's dignity, rights, reputation, health, and livelihood, causing the plaintiff extreme humiliation, fear, shame, anxiety, hair loss, nausea, and insomnia.

## AS FOR THE THIRD CAUSE OF ACTION

### AGAINST DEFENDANTS NYCDOE AND UFT FOR UNLAWFUL RETALIATION AGAINST PLAINTIFF FOR COMPLAINING AND REPORTING UNLAWFUL RACE DISCRIMINATION AGAINST PLAINTIFF UNDER NYSHRL

55.    Plaintiff repeats and alleges each and every one of the allegations contained in paragraph "1" through "54" as if fully set forth herein.

56.    Defendants willfully and intentionally subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about race discrimination against him, including Mr. Jordan having filed race discrimination grievances against defendant NYCDOE and race discrimination complaints against the UFT when plaintiff was an elected delegate to the UFT Delegate Assembly and plaintiff was also the Co-Chair of the Black and Latino Caucus of the UFT's Delegate Assembly on the basis of defendants violation of New York State Executive Law

## AS FOR THE FOURTH CAUSE OF ACTION

AGAINST DEFENDANTS NYCDOE AND UFT FOR UNLAWFUL RETALIATION AGAINST PLAINTIFF FOR COMPLAINING AND REPORTING, AND BRINGING SUIT AGAINST THE DEFENDANTS FOR UNLAWFUL RACE DISCRIMINATION AGAINST PLAINTIFF UNDER NYSHRL

57.    Plaintiff repeats and alleges each and every one of the allegations contained in paragraph "1" through "56" as if fully set forth herein.

58.    Defendants willfully and intentionally subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about race discrimination against him, including Mr. Jordan having filed race discrimination grievances against defendant NYCDOE and race discrimination complaints against the UFT when plaintiff was an elected delegate to the UFT Delegate Assembly and plaintiff was also the Co-Chair of the Black and Latino Caucus of the UFT's Delegate Assembly and defendants conduct is in violation of the New York State Executive Law §§ 296, *et seq.*

59.    Plaintiff has been materially damaged by defendants' discriminatory conduct, which has impacted plaintiff's dignity, rights, reputation, health, and livelihood, causing the plaintiff extreme humiliation, fear, shame, anxiety, hair loss, nausea, and insomnia.

## AS FOR THE FIFTH CAUSE OF ACTION

AGAINST DEFENDANTS NYCDOE AND UFT FOR UNLAWFUL RETALIATION AGAINST PLAINTIFF FOR COMPLAINING AND REPORTING, AND BRINGING SUIT AGAINST THE DEFENDANTS FOR UNLAWFUL RACE DISCRIMINATION AGAINST PLAINTIFF UNDER NYSHRL

60.    Plaintiff repeats and alleges each and every one of the allegations contained in paragraph "1" through "59" as if fully set forth herein.

61.    Defendants willfully and intentionally subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about race discrimination against him, including Mr. Jordan having filed race discrimination grievances against defendant NYCDOE and race discrimination complaints against the UFT when plaintiff was an elected delegate to the UFT Delegate Assembly and plaintiff was also the Co-Chair of the Black and Latino Caucus of the UFT's Delegate Assembly and defendants conduct is in violation of the Administrative Code of the City of New York § 8-101 *et seq.,* § -107(15) *et seq.* and § 8-502 *et seq.*

62.     Plaintiff has been materially damaged by defendants' discriminatory conduct, which has impacted plaintiff's dignity, rights, reputation, health, and livelihood, causing the plaintiff extreme humiliation, fear, shame, anxiety, hair loss, nausea, and insomnia.

## AS FOR THE SIXTH CAUSE OF ACTION

AGAINST DEFENDANTS NYCDOE AND UFT FOR UNLAWFUL DISPARATE TREATMENT BASED ON PLAINTIF'S RECORD OF HAVING SUCH DISABILITIES AND/OR PERCEIVD DISABILITIES UNDER ADA AND NYSHRL

63.     Plaintiff repeats and alleges each and every one of the allegations contained in paragraph "1" through "62" as if fully set forth herein.

64.     Defendants NYCDOE and defendant UFT discriminatory and harassment by not allowing the plaintiff to return to his job, based wholly or in substantial part on plaintiff's perceived disabilities and record of past disabilities, in violation of the ADA and Rehabilitation Act and the New York State Executive Law §§ 296, *et seq.*

65.     Plaintiff has been materially damaged by defendants' discriminatory conduct, which has impacted plaintiff's dignity, rights, reputation, health, and livelihood, causing the plaintiff extreme humiliation, fear, shame, anxiety, hair loss, nausea, and insomnia.

## AS FOR THE SEVENTH CAUSE OF ACTION

AGAINST DEFENDANTS NYCDOE AND UFT FOR UNLAWFUL RETALIATION AGAINST PLAINTIFF FOR COMPLAINING AND REPORTING, AND BRINGING SUIT AGAINST THE DEFENDANTS FOR UNLAWFUL DISABILITY DISCRIMINATION AGAINST PLAINTIFF UNDER THE ADA

66.     Plaintiff repeats and alleges each and every one of the allegations contained in paragraph "1" through "65" as if fully set forth herein.

67.     Defendants willfully and intentionally subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about disability discrimination against him, including Mr. Jordan having filed race discrimination grievances against defendants NYCDOE and UFT and race discrimination complaints against the UFT when plaintiff was an elected delegate to the UFT Delegate Assembly and plaintiff was also the Co-Chair of the Black and Latino Caucus of the UFT's Delegate Assembly and defendants' conduct is in violation of the ADA and Rehabilitation Act.

68.     Plaintiff has been materially damaged by defendants' discriminatory conduct, which has impacted plaintiff's dignity, rights, reputation, health, and livelihood, causing the plaintiff extreme humiliation, fear, shame, anxiety, hair loss, nausea, and insomnia.

## AS FOR THE EIGHTTH CAUSE OF ACTION

**AGAINST DEFENDANTS TRS, UFT AND NYCDOE FOR UNLAWFUL VIOLATION OF THE TRUTH IN LENDING ACT (TILA), IN RETALIATION AGAINST PLAINTIFF FOR COMPLAINING, REPORTING, AND FILING GRIEVANCES, AND FILING ADMINISTRATIVE COMPLAINTS AGAINST THE DEFENDANTS FOR RACE DISCRIMINATION AGAINST PLAINTIFF**

69.     Plaintiff repeats and alleges each and every one of the allegations contained in paragraph "1" through "68" as if fully set forth herein.

70.     Defendant TRS willfully and intentionally, in violation of the Truth in Lending Act, failed to inform the Plaintiff at the time the defendant made the loan to the plaintiff that his loan balance of $2,866.16 with TRS, that this amount would be deducted from his monthly pension check for as long as he was receiving a pension, which the defendants did to subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about race discrimination against him, including Mr. Jordan having filed race discrimination grievances against defendant NYCDOE and race discrimination complaints against the UFT when plaintiff was an elected delegate to the UFT Delegate Assembly and plaintiff was also the Co-Chair of the Black and Latino Caucus of the UFT's Delegate Assembly.

71.     Plaintiff has been materially damaged by defendants' discriminatory conduct, which has impacted plaintiff's dignity, rights, reputation, health, and livelihood, causing the plaintiff extreme humiliation, fear, shame, anxiety, hair loss, nausea, and insomnia.

## AS FOR THE NINTH CAUSE OF ACTION

**AGAINST DEFENDANTS TRS, UFT AND NYCDOE FOR UNLAWFUL IMPOSITION OF AN UNCONSCIONABLE PENSION CONTRACT ON THE PLAINTIFF IN RETALIATION AGAINST PLAINTIFF FOR COMPLAINING, REPORTING, AND FILING GRIEVANCES, AND FILING ADMINISTRATIVE COMPLAINTS AGAINST THE DEFENDANTS FOR RACE DISCRIMINATION AGAINST PLAINTIFF**

72.     Plaintiff repeats and alleges each and every one of the allegations contained in paragraph "1" through "71" as if fully set forth herein.

73. Defendant TRS and the other defendants willfully and intentionally, imposed an unconscionable pension contract on the plaintiff, where his pension of $15,000 a month is reduced to $500 per month after deductions for fees and other unknown items that the plaintiff was never informed about, which the defendants did to subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about race discrimination against him, including Mr. Jordan having filed race discrimination grievances against defendant NYCDOE and race discrimination complaints against the UFT when plaintiff was an elected delegate to the UFT Delegate Assembly and plaintiff was also the Co-Chair of the Black and Latino Caucus of the UFT's Delegate Assembly.

74. Plaintiff has been materially damaged by defendants' discriminatory conduct, which has impacted plaintiff's dignity, rights, reputation, health, and livelihood, causing the plaintiff extreme humiliation, fear, shame, anxiety, hair loss, nausea, and insomnia.

## AS FOR THE NINTH CAUSE OF ACTION

AGAINST DEFENDANTS TRS, UFT AND NYCDOE FOR UNLAWFUL VIOLATION OF THE FIRST AMEMDMENT TO THE US CONSTITUTION, IN RETALIATION AGAINST PLAINTIFF FOR COMPLAINING, REPORTING, AND FILING GRIEVANCES, FOR EXCERCISING HIS RIGHTS AS AN ELECTED MEMBER OF THE DELEGATE ASSEMBELY OF THE UFT AND A MEMBER OF THE BLACK AND LATINO DELEGATE ASSEMBELY CAUCUS

75. Plaintiff repeats and alleges each and every one of the allegations contained in paragraph "1" through "74" as if fully set forth herein.

76. Defendants willfully and intentionally subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about race discrimination against him and other minorities, including Mr. Jordan having filed race discrimination grievances against defendant NYCDOE and race discrimination complaints against the UFT when plaintiff was an elected delegate to the UFT Delegate Assembly and plaintiff was also the Co-Chair of the Black and Latino Caucus of the UFT's Delegate Assembly and defendants conduct is in violation of First Amendment to the United State Constitution.

77. Plaintiff has been materially damaged by defendants' discriminatory conduct, which has impacted plaintiff's dignity, rights, reputation, health, and livelihood, causing the plaintiff extreme humiliation, fear, shame, anxiety, hair loss, nausea, and insomnia.

## JURY DEMAND & PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

a.      assume jurisdiction over this action, and empanel a jury of plaintiff's peers to hear and determine all material issues of fact in this action, and,

b.      enter judgment and award in favor of the plaintiff, and against all defendants, jointly and severally, for compensatory damages, in an amount to be determined at trial by a jury, but not less than $1,000,000, for their unlawful retaliatory acts against plaintiff, including payment to Mr. Jordan for his severe mental and physical distress, mental anguish, humiliation and embarrassment from defendants acts under Sec.1981, Sec. 1983, Title VII, the NYSHRL, the NYCHRL, the ADA, the Rehabilitation Act, The Truth in Lending Act, Contract Law, and the First Amendment to the United States Constitution; and,

c.      enter judgment and award in favor of the plaintiff and against defendant NYCDOE, TRS, and UFT for punitive and/or liquidating damages, in an amount to be determined at trial by a jury, but not less than $1,000,000, for the unlawful discriminatory and retaliatory acts against plaintiff, including payment to Mr. Jordan for his severe mental and physical distress, mental anguish, humiliation and embarrassment from defendants acts under Sec. 1981, Sec. 1983, Title VII, the NYSHRL, the NYCHRL, the ADA, the Rehabilitation Act, The Truth in Lending Act, Contract Law, and the First Amendment to the United States Constitution; and,

d.      enter judgment and award in favor of the plaintiff and against all defendants, jointly and severally, for punitive and/or liquidating damages, in an amount to be determined at trial but not less than $1,000,000, fir their unlawful discriminatory and retaliatory acts against plaintiff under the NYCHRL; and,

e.      enter judgment and award in favor of the plaintiff and against all defendants jointly and severally, for plaintiff's reasonable attorney's fees and the cost and expenses associated with the prosecution of this civil action under Sec. 1981, Sec. 1983, Title VII, the NYSHRL, the NYCHRL, the ADA, the Rehabilitation Act, The Truth in Lending Act, Contract Law, and the First Amendment to the United States Constitution; and,

f.      grant such additional or alternative relief as may appear to the Court to be just and proper.

Date:  October 1, 2024
       New York, NY

                                        Respectfully Submitted

                                        Victor Jordan
                                        Plaintiff
                                        PO Box 7078
                                        James A. Farley Building
                                        New York, NY 10116-7078
                                        (718) 679-1940


TO:   New York City Department of Education
      65 Court Street
      Brooklyn, NY 11201

      United Federation of Teacher
      52 Broadway
      New York, NY 10004

      Teachers' Retirement System
      55 Water Street
      New York, NY 10038

      Sandra March
      UFT Representative
      TRS Trustee
      52 Broadway
      New York, NY 10004