UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                  :

**VICTOR JORDAN**,
                  :

                  Plaintiff,     :

                  :   **MEMORANDUM DECISION AND**
       – against –         **ORDER**
                  :
                   24-CV-6969 (AMD) (PCG)
**THE DEPARTMENT OF EDUCATION OF**  :
**THE CITY OF NEW YORK**; **THE UNITED**
**FEDERATION OF TEACHERS**; **THE**    :
**TEACHER'S RETIREMENT SYSTEM**; and
**SANDRA MARCH**, in her individual capacity and  :
official capacity as UFT Representative,
                  :

            Defendants.   :
------------------------------------------------------------------ X
**ANN M. DONNELLY**, United States District Judge:

On October 2, 2024, the plaintiff filed this action alleging violations of 42 U.S.C.

§§ 1981 and 1983, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act

42 U.S.C. §§ 12101 *et seq*. ("ADA"), the Rehabilitation Act, the Truth in Lending Act § 15

U.S.C. 1601 *et seq.*, the First Amendment of the United States Constitution, the New York City

Human Rights Law ("NYCHRL"), Administrative Code of the City of New York § 8-101 *et*

*seq.*, § 8-107(15), and § 8-502 *et seq.*, and the New York State Human Rights Law

("NYSHRL"), New York State Executive Law § 296 *et seq.*  (ECF No. 1.)  Before the Court are

the defendants' motions to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b).  (ECF Nos. 17, 18.)  As explained below, the Court grants the motions.

**BACKGROUND**

I.    **Factual Background**

a.    **1984 – 2011:  DOE Employment**

The plaintiff began working for the New York City Department of Education ("DOE") in 1984.  (ECF No. 1 ¶¶ 5–6.)  On February 1, 1985, the plaintiff became a full-time high school mathematics teacher at Erasmus Hall High School in Flatbush, Brooklyn, and subsequently "received excellent classroom observations" from the Principal and Assistant Principal.  (*Id.* ¶¶ 5–7, 15.)  The plaintiff was "very active in" the United Federation of Teachers ("UFT").  (*Id.* ¶ 11.)  In early 1990, the plaintiff was elected Co-Chair of the Black & Latino Caucus in the UFT Delegate Assembly (the "Black and Latino Caucus" or "Caucus").  (*Id.* ¶¶ 11–12.)  The plaintiff says that in this position he had a duty to "call out" the UFT when it "had a blind spot to [ ] areas of concern to minority teachers," and "to encourage [ ] UFT to provide the same degree of care and representation to its [B]lack and Latino members as [it] was providing to its Caucasian members."  (*Id.* ¶ 13.)

The plaintiff alleges the DOE and UFT "did not welcome" his participation in the Black and Latino Caucus, and discriminated and retaliated against him.  (*Id.* ¶ 14.)  "As a result" of being "the only African American Member of the Black [and] Latino Caucus at Erasmus Hall High School," "the Assistant Principal and the Principal began to harass" him, gave him "unsatisfactory observation" classroom reports, and gave him fewer opportunities "to earn additional compensation" that "he was qualified to receive based on his seniority."  (*Id.* ¶¶ 14–17.)

The plaintiff "filed a grievance against the Erasmus Hall High School Administration" at an unspecified date, "which did not stop the bias and discriminatory treatment received."  (*Id.*

2

¶ 18.)  In 1994, the plaintiff filed a complaint against the DOE with the United States Equal Employment Opportunity Commission ("EEOC"), but the discrimination continued, and he "became the only teacher in the Math Department who received unsatisfactory observation reports."  (*Id.* ¶¶ 19, 35.)  The plaintiff alleges "[u]pon information and belief" that "the UFT did not provide him with the same representation at the grievance hearing as it provided to Caucasian teachers because the UFT did not approve of his involvement with the Black and Latino Caucus as an African American in the Delegate Assembly of the UFT."  (*Id.* ¶ 20.)  He says that his "depression and anxiety were in large part caused" by this "disparate treatment." (*Id.* ¶ 21.)

In the spring of 1994, the plaintiff suffered a "line of duty injury to his back . . . from a fall at work," which he alleges, without further detail, was "in part caused by him being subjected to disparate treatment and harassment in the workplace."  (*Id.* ¶¶ 25, 27.)  After "a number of months" struggling with pain and side effects from pain medication, he applied for a disability retirement, which the Teachers' Retirement System ("TRS") denied on June 8, 1998. (*Id.* ¶¶ 27–28.)

In January 2010, following "an extended medical leave," the plaintiff "accepted a teaching position at W.E.B. DuBois Academic High School."  (*Id.* ¶ 29.)  However, on the first day of classes, "he was informed" by the DOE's Human Resources Department that he was not approved for the position.  (*Id.*)  The plaintiff called the UFT "to help him to resolve the matter," but the UFT "refuse[d] to provide any assistance."  (*Id.*)

### b.      2011 – Approximately 2017:  Early Retirement and Pension Award

The plaintiff alleges that in June 2011, he was "forced to file for early retirement because the defendants would not allow him to return to his job."  (*Id*. ¶ 30.)  After "almost six years,"

the TRS processed his retirement application and awarded him a pension of $268.50 per month. (*Id.* ¶¶ 30–31.)  The plaintiff alleges that the pension awarded includes: (1) an "annual Loan Reduction of $2,866.16 each year;" (2) the "annual Early retirement reduction of $3,231.96;" and (3) the "annual Retirement option reduction of $345.87." (*Id.* ¶ 33.)  The plaintiff was dissatisfied with the pension, and contacted defendant Sandra March, the UFT Trustee on the TRS Board, who "showed no interest in helping the plaintiff to resolve the matter and failed to even acknowledge the plaintiff." (*Id.* ¶ 32.)  The plaintiff alleges that UFT and Sandra March did not help him challenge the award to "retaliate against the plaintiff for his involvement, as an African American teacher, in the Black & Latino Caucus of the UFT Delegate Assembly and for filing an EEOC complaint [in 1994]." (*Id.* ¶¶ 34–35.)

c.      **Post-2011 Retirement Allegations**

On April 18, 2022, the DOE's Office of Teacher Recruitment and Quality confirmed that the plaintiff's high school mathematics teaching license was valid to teach in New York City public schools. (*Id.* ¶ 38.)  On August 10, 2022, the plaintiff interviewed for and "was nominated" for a high school mathematics teaching position at Bronx Metropolitan High School, but DOE's Director of Human Resources, Yissel Martinez, "rejected [his] application even though" he had a valid license to teach in the City. (*Id.* ¶¶ 39–40.)  Similarly, on August 31, 2022, the plaintiff interviewed for and "was again nominated" for a high school mathematics teaching position at Bronx Wings Academy High School. (*Id.* ¶ 41.)  Once again, the DOE's Director of Human Resources denied the application even though the plaintiff had a valid teaching license. (*Id.* ¶¶ 41–42.)  The plaintiff alleges that these job rejections were "specifically intended to harass and annoy plaintiff," and "deprive" him of "his dignity, health, livelihood, professional reputation, and ultimately his employment." (*Id* ¶ 43.)  The plaintiff contacted

4

Miriam Quiles of the UFT "for help to get [his] job back, but once again the defendants discriminated, retaliated and obfuscated and did nothing to help the plaintiff to get his job back" in "retaliation" for his participation in the Black and Latino Caucus of the UFT in the 1990s. (*Id.* ¶¶ 44–45.)

The plaintiff alleges that the UFT continues to retaliate against him for filing EEOC complaints in 1994 and 2024. (*Id.* ¶ 35.) He does not attach either complaint or describe the contents of the complaints. He claims that the UFT made "unauthorized change[s]" to his address "to prevent him from receiving a ballot to vote in a number of competitive union elections," and failed to send him email notices of the UFT's Retired Teachers Chapter's meetings. (*Id.* ¶¶ 35–36.)

### d.    Claims For Relief

The plaintiff claims that the defendants — the DOE and TRS (the "City Defendants"), and the UFT and Sandra March (the "Union Defendants") — engaged in "discriminatory conduct" and "willfully and intentionally subjected plaintiff to unlawful retaliation for his opposition to, his reporting of, and complaints about race discrimination against him." (*See, e.g.*, *id.* ¶¶ 48, 51.) The plaintiff brings claims for: discrimination under 18 U.S.C. §§ 1981 and 1983 (First Cause of Action), retaliation under Title VII (Second Cause of Action), retaliation under the NYSHRL and NYCHRL (Third, Fourth, and Fifth Causes of Action), discrimination for disabilities under the ADA and NYSHRL (Sixth Cause of Action), retaliation for reporting discrimination under the ADA (Seventh Cause of Action), violation of the Truth in Lending Act (TILA) related to his pension award (Eighth Cause of Action), imposition of an unconscionable

pension contract (Ninth Cause of Action), and violation of the First Amendment (Tenth Cause of Action).[1]  (*Id.* ¶¶ 47–77.)

## II.   Procedural Background

On July 3, 2024, the EEOC issued the plaintiff a right to sue letter, advising him that a **"lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice."**  (ECF No. 18-3 at 1 (emphasis in original).)[2]  The plaintiff filed this action on October 2, 2024 for violations of Title VII, the NYCHRL, the NYSHRL, the ADA, the Rehabilitation Act, the Truth in Lending Act, and the First Amendment of the United States Constitution.  (ECF No. 1.)[3]  The plaintiff is seeking compensatory damages of at least $1,000,000, "punitive and/or liquidat[ed] damages" of at least $1,000,000, and attorney's fees and costs.  (*Id.* at 14.)  He sought leave to proceed *in forma pauperis* (ECF No. 2), which the Court granted (*ECF Order dated Oct. 15, 2024*).

The defendants moved to dismiss the complaint on February 14, 2025.  (ECF Nos. 17, 18.)  The Court directed the plaintiff to respond by March 14, 2025 (*ECF Order dated Feb. 14, 2025*), but granted his motion for an extension of time to March 31, 2025, in part to enable him to retain counsel (ECF No. 19; *ECF Order dated Feb. 24, 2025*).

On March 11, 2025, the plaintiff moved to recuse the Court (ECF No. 20), a motion that the Court denied the next day (*ECF Order dated Mar. 12, 2025*).  In that order, the Court reminded the plaintiff that his response was due on March 31, 2025.  (*Id.*)  The plaintiff filed a "notice of Interlocutory Appeal" of the order on March 25, 2025 (ECF No. 21), and on March 27, 2025 — four days before his response was due — the plaintiff asked the Court to "stay the

---

[1] The complaint describes this as the "Ninth" cause of action, but it is the tenth cause of action listed.

[2] The City Defendants attached this letter to their motion to dismiss.  (*See* ECF No. 18-3.)

[3] The plaintiff also filed a motion for an order to show cause, a temporary restraining order, and a preliminary injunction (ECF No. 3), which the Court denied because the plaintiff did not show irreparable harm or likelihood of success on the merits (*see* ECF No. 5).

proceedings" until the Second Circuit resolved his appeal (ECF No. 22).[4]  The Court denied the stay, but *sua sponte* extended his time to respond to April 21, 2025.  (*ECF Order dated Mar. 31, 2025.*)

The plaintiff did not respond to the motions or otherwise contact the Court.  In a May 7, 2025 order, the Court noted that the plaintiff had not responded despite multiple extensions, so the Court considered the motions fully briefed.  (*ECF Order dated May 7, 2025.*)

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (cleaned up).

Because the plaintiff is proceeding *pro se*, the Court construes his complaint liberally and evaluates it by "less stringent standards than formal pleadings drafted by lawyers," *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and interprets it to raise "the strongest arguments" that it suggests, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d

---

[4] The Second Circuit affirmed the Court's denial of the plaintiff's motion for preliminary injunctive relief, denied his petition for a writ of mandamus instructing the Court to grant his motion for recusal, and dismissed the appeal.  (*See* ECF Nos. 25-1, 26–28.)

471, 477 (2d Cir. 2006)) (cleaned up); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally") (citations omitted).

While the plaintiff did not oppose the defendants' motions, "failure to oppose a 12(b)(6) motion alone cannot justify dismissal of a complaint." *LaFargue v. River Cafe Co.*, No. 12-CV-5336, 2015 WL 1469544, at *2 (E.D.N.Y. Mar. 30, 2015) (citing *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)). In deciding an unopposed motion to dismiss, a court may "assume the truth of a [complaint]'s factual allegations and test only its legal sufficiency." *Id.* (quoting *McCall*, 232 F.3d at 322). A court may also examine "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).

## DISCUSSION

### I. Section 1981 and 1983 Claims (First Cause of Action)

Section 1983 provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights," *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979), such as those in Section 1981 or the First or Fourteenth Amendments. "Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under

8

the color of state law.'" *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)) (citations omitted).

Section 1981 provides in relevant part that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "The rights protected by [Section 1981] are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). A plaintiff claiming a violation of Section 1981 related to employment must allege "(1) that []he is a member of a protected class; (2) that []he was qualified for employment in the position; (3) that []he suffered an adverse employment action; and, in addition, []he has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Kiseleva v. Greenspan*, 755 F. Supp. 3d 367, 377 (S.D.N.Y. 2024) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)). "[Section] 1981 does not provide a separate private right of action against state actors," therefore a claim for a violation of Section 1981 against a municipality can be brought only under Section 1983. *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018).

### a.       Statute of Limitations

"The statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (citations omitted). All defendants argue "any claims [brought under Sections 1981 or 1983] accruing prior to October 1, 2021," three years prior to the filing of the complaint, are time-barred. (ECF No. 18-4 at 13; ECF No. 17-2 at 15–17.)

9

The plaintiff alleges discrete acts of discrimination or retaliation that occurred before October 1, 2021, including discrimination and retaliation based on race and disability in the 1990s through his pension award in 2017. Those claims are barred by the statute of limitations. Accordingly, the Court dismisses the claims of discrete violations that occurred before October 1, 2021, including the "unsatisfactory" performance reviews and fewer opportunities "to earn additional compensation" in the 1990s, the alleged "forced . . . early retirement" in 2011, and the 2017 pension award.

However, under the "continuing violation" exception to the statute of limitations, "the existence of [ ] a continuing discriminatory practice or policy may delay the commencement of the statute of limitations period 'until the last discriminatory act in furtherance of it.'" *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999) (quoting *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (internal quotation marks and citations omitted)). To the extent that the complaint alleges "continuing violation[s]," the latest-in-time allegations concern the plaintiff's job applications in 2022, so the Court also analyzes the merits of the plaintiff's First Cause of Action related to these more recent allegations below.

### b.    City Defendants

The plaintiff brings a claim for "unlawful race discrimination" under Sections 1981 and 1983 against the City Defendants in his First Cause of Action. (ECF No. 1 ¶¶ 47–51 (capitalization altered).) Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights" found elsewhere, such as in Section 1981. *Baker*, 443 U.S. at 144 n.3; *Duplan*, 888 F.3d at 619 (Section 1983 is "the *exclusive federal remedy* for violation of the rights guaranteed in § 1981 by state governmental units." (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989)) (emphasis in *Duplan*)). Accordingly, interpreting the

10

*pro se* plaintiff's complaint to raise "the strongest arguments" that it suggests, *Fowlkes*, 790 F.3d at 387 (citation omitted), the Court construes the plaintiff's First Cause of Action for "unlawful race discrimination" against the City Defendants as a Section 1983 claim for violations of Section 1981 and the Equal Protection Clause of the Fourteenth Amendment.

To hold a municipality liable under Section 1983, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and alterations omitted)) (citing cases); *see also Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023). The City Defendants argue that the plaintiff has not pled *Monell* liability because he "fails to articulate how any [City] practices violated his Constitutional right to due process," and "fails to adequately allege a municipal policy or custom resulted in any deprivation of his rights." (ECF No. 18-4 at 17 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).)

The plaintiff makes vague and general claims that the City Defendants "discriminated against him because of his race" and "subjected [him] to unlawful retaliation" and "race discrimination." (*See, e.g.*, ECF No. 1 ¶¶ 17, 48–49.) The plaintiff does not, however, identify "an[y] official policy or custom" adopted by the DOE or the TRS that would give rise to municipal liability under Section 1983. *Lucente*, 980 F.3d at 297 (citation omitted) (cleaned up); *see also Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 99–100 (2d Cir. 2020) ("[A] plaintiff must identify a municipal policy to prevail on a *Monell* claim.") (citation omitted). Nor does the plaintiff allege any facts suggesting a "persistent and widespread practice" by the City Defendants' employees — the only allegations in the complaint are about the plaintiff. *Lucente*, 980 F.3d at 297–98 (internal quotation marks and citations omitted). These allegations are

11

insufficient to plead municipal liability. *See Mule v. Dep't of Educ. of City of New York*, 797 F. Supp. 3d 9, 43 (E.D.N.Y. 2025) (dismissing Section 1983 claim against the DOE under *Monell* due to the absence of the "execution of a government's policy or custom") (citing *Monell*, 436 at 694; *Anilao v. Spota*, 27 F.4th 855, 873–74 (2d Cir. 2022)).

Accordingly, the Court dismisses the First Cause of Action as to the City Defendants.

### c.    Union Defendants

The plaintiff also brings a claim for "unlawful race discrimination" under Sections 1981 and 1983 against the Union Defendants in his First Cause of Action.  (ECF No. 1 ¶¶ 47–51 (capitalization altered).)[5]  The Union Defendants argue that they "are not state actors for the purposes of § 1983 liability."  (ECF No. 17-2 at 16–17.)  "In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law."  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citing *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.1992)).  "[A] private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents,'" which requires that the private actor and the state "share some common goal to violate the plaintiff's rights."  *Betts v. Shearman*, 751 F.3d 78, 84–85 (2d Cir. 2014) (quoting *Ciambriello*, 292 F.3d at 324).  "Labor unions . . . generally are not state actors."  *Ciambriello*, 292 F.3d at 323 (citation omitted).  And, apart from a conclusory assertion that "the defendants were acting 'under color of state law,'" the plaintiff "does not argue otherwise."  (ECF No. 1 ¶ 50.)  *Ciambriello*, 292 F.3d at 323.  Such "a formulaic recitation of the elements" of Section

---

[5] To the extent the plaintiff claims the Union Defendants breached the duty of fair representation under the Labor Management Relations Act ("LMRA"), the Court lacks subject matter jurisdiction over the claim because the plaintiff was a public employee. *See Ford v. D.C. 37 Union Loc. 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (noting that "[a]s the language of the LMRA makes plain, public employees are not covered by that statute;" citing 29 U.S.C. § 152(2), which exempts from the definition of employer "any State or political subdivision thereof;" and collecting cases).

1983 "will not do." *Twombly*, 550 U.S. at 555.  The plaintiff therefore does not state a Section 1983 claim against the Union Defendants.

As for the Section 1981 claim against the Union Defendants, "a plaintiff . . . must show: (1) that [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerning one of activities enumerated in § 1981." *Staten v. Patrolmen's Benevolent Ass'n of City of New York, Inc.*, 282 F. Supp. 3d 734, 740 (S.D.N.Y. 2017) (quoting *Lauture v. International Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000)), *aff'd*, 736 F. App'x 17 (2d Cir. 2018).  "[U]nder Section 1981, a plaintiff must plausibly allege that 'but for race, [he] would not have suffered the loss of a legally protected right. . . . '[I]t is insufficient to merely plead that race was a motivating factor in the discriminatory action.'" *Iodice v. Archcare at Terence Cardinal Cooke Health Care Ctr.*, No. 20-CV-4217, 2022 WL 4124795, at *10 (S.D.N.Y. Sept. 8, 2022) (quoting *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020); then quoting *Brown v. Montefiore Med. Ctr.*, No. 19-CV-11474, 2021 WL 1163797, at *5 (S.D.N.Y. Mar. 25, 2021)).

The Union Defendants say that the plaintiff's allegations are "conclusory" and do not state a plausible claim for relief.  (ECF No. 17-2 at 11–13.)  As an initial matter, it is not clear which "one of [the] activities enumerated in § 1981" form the basis of the plaintiff's Section 1981 claim against the UFT.  *Staten*, 282 F. Supp. 3d at 740 (citation and subsequent history omitted).  The only claims about UFT within the statute of limitations for a Section 1981 claim are that "[o]n September 8, 2022, Plaintiff [ ] contacted Miriam Quiles of the UFT for help to get [his] job back," after the DOE declined to hire him for two different positions in August 2022, "but once again the defendants discriminated, retaliated and obfuscated and did nothing to help the plaintiff to get his job back."  (ECF No. 1 ¶ 44.)  The plaintiff does not explain how this is a

13

violation of his Section 1981 right "to make and enforce contracts, . . . includ[ing] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," nor does he specify a contract or a contractual relationship that the Union Defendants have violated.  42 U.S.C. § 1981(a)–(b). Finally, as to discriminatory intent, the plaintiff alleges only that "[o]n information and belief, [ ] UFT's inconsistent and discriminatory application of teacher certification rules are intentional retaliation against plaintiff[']s participation in the Black & Latino Caucus of the UFT as an African American teacher."  (ECF No. 1 ¶ 45.)  The plaintiff does not identify the "certification rules" at issue, but regardless, it is well established that the "naked allegation" that the defendants "selectively enforced the [ ] rules" against the plaintiff "because [he] [is] [B]lack [ ] is too conclusory to survive a motion to dismiss."  *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (citing *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371 (2d Cir. 1978)) (citation modified).

Accordingly, the Court dismisses the plaintiff's Section 1981 and Section 1983 claims — his First Cause of Action — in their entirety.

## II.      Title VII and ADA Claims (Second, Sixth, and Seventh Causes of Action)

For a Title VII claim in New York to be timely, the "plaintiff generally must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' 42 U.S.C. § 2000e-5(e)(1), and must then file an action in federal court within 90 days of receiving a right-to sue letter from the agency, *id.* § 2000e-5(f)(1)."  *Duplan*, 888 F.3d at 621–22.  Similarly, a plaintiff must present ADA claims to the EEOC, or an analogous state or local agency, within 300 days of the acts being challenged as unlawful, and a plaintiff must commence a lawsuit related to those claims within 90 days of

14

receiving a right to sue letter from the EEOC.  *See Hogan v. Mahabir*, No. 22-CV-7858, 2023 WL 3628554, at *4 (E.D.N.Y. May 24, 2023); 42 U.S.C. § 2000e–5(e)(1); *see also* 42 U.S.C. § 12117(a).  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Hogan*, 2023 WL 3628554, at *5 (quoting *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131–32 (2d Cir. 2021)).

The plaintiff alleges that he filed an EEOC complaint "in 1994" and again "in 2024." (ECF No. 1 ¶ 35.)  The defendants argue that "[t]o the extent Plaintiff claims discrete discriminatory or retaliatory acts occurring prior to 300 days before 2024, such claims under the ADA and Title VII are time-barred."  (ECF No. 18-4 at 13; *see also* ECF No. 17-2 at 19.)  The City Defendants also attached to their motion to dismiss a right to sue letter that the EEOC sent the plaintiff, dated July 3, 2024.  (ECF No. 18-3.)  The plaintiff's latest-in-time allegations are from August 2022, when the DOE declined to hire him for two different jobs.  (ECF No. 1 ¶¶ 39–42.)  It is not clear when the plaintiff filed the EEOC complaint in 2024, or what he alleged in the EEOC complaint.  In any event, to be timely, the plaintiff would have had to file his complaint 300 days from August 2022, which would have been in June 2023.  He filed the EEOC complaint in 2024, well beyond 300 days.  Accordingly, the plaintiff's August 2022 claims, as well as his claims about conduct before August 2022, are untimely.[6]

The Court dismisses the plaintiff's Title VII and ADA claims — his Second and Sixth Causes of Action — in their entirety.  The Court also dismisses his Seventh Cause of Action to the extent that it alleges an ADA claim.

---

[6] To the extent that the plaintiff alleges continuing violations related to UFT mailings and emails, those allegations are discussed below in Section VI.

**III.    Rehabilitation Act Claim (Seventh Cause of Action)**

In his Rehabilitation Act claim, the plaintiff alleges "unlawful retaliation" and "discriminatory conduct" related to his "complaints about disability discrimination against him." (ECF No. 1 ¶¶ 66–68.)  "To establish a *prima facie* claim of disability discrimination under the Rehabilitation Act, a plaintiff must show: (1) []he is disabled within the meaning of the Act; (2) []he was otherwise qualified to perform the essential functions of h[is] job, with or without reasonable accommodation; (3) []he suffered an adverse employment action due solely to h[is] disability; and (4) h[is] employer receives federal financial assistance."  *Adams v. New York State Dep't of Corr. & Cmty. Supervision*, No. 23-CV-5524, 2025 WL 1677347, at *4 (E.D.N.Y. June 13, 2025) (citing *Henry v. McDonald*, 531 F. Supp. 3d 573, 588 (E.D.N.Y. 2021)) (internal quotation marks omitted).  As relevant here, to allege that he has a disability under the Rehabilitation Act, the plaintiff must establish that he suffers from "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1).  A plaintiff may also meet the statutory definition of "disability" if he has "a record of such an impairment" or, if he is "regarded as having such an impairment;" the plaintiff must "establish[] that he . . . has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(1), (3)(A).

"Rehabilitation Act Claims in New York are governed by New York's three-year statute of limitations governing personal injury actions, N.Y. C.P.L.R. § 214(5)."  *Piazza v. Florida Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 687 (S.D.N.Y. 2011) (citations omitted).  Therefore, as with the plaintiff's Section 1981 and 1983 claims, the only facts alleged within the statute of

limitations are from August 2022, when the DOE declined to hire the plaintiff for two different teaching jobs.  (ECF No. 1 ¶¶ 39–42.)

As an initial matter, the plaintiff has not alleged a disability under the Rehabilitation Act. He alleges a "line of duty injury to his back" in the spring of 1994, then describes "an extended medical leave" that occurred sometime before January 2010. (*Id.* ¶¶ 25, 27, 29.)  The plaintiff does not allege any facts suggesting that he was still injured in August 2022, let alone that the injury "substantially limit[ed] one or more major life activities."  42 U.S.C. § 12102(1); *see Henry*, 531 F. Supp. 3d at 588 (dismissing Rehabilitation Act claims where the plaintiff claimed "he suffers from depression, stress, migraines, and headaches," but "d[id] not identify any major life activity that is impaired by these conditions").  Nor does he allege that he is "regarded as having such an impairment."  42 U.S.C. § 12102(1), (3)(A).

Additionally, the defendants argue that the plaintiff does not allege a sufficient causal relationship between his alleged disability and any adverse employment action.  (ECF No. 18-4 at 19–20; ECF No. 17-2 at 19–20.)  The plaintiff "must show that [his] disability was a 'but-for cause'" of an adverse employment action but "need not show that it was the 'sole cause.'" *Adams*, 2025 WL 1677347, at *5 (quoting *Natofsky*, 921 F.3d at 341).  The plaintiff "has a *de minimis* burden to produce direct or circumstantial evidence that would lead a reasonable fact-finder to conclude that [the adverse employment action] occurred under circumstances giving rise to an inference of discrimination." *Id.* (quoting *Kleyman v. SUNY Downstate Med. Ctr.*, No. 18-CV-3137, 2020 WL 5645218, at *15 (E.D.N.Y. Sept. 21, 2020)).  The plaintiff does not allege a causal relationship between his back injury in 1994 and any adverse employment action in August 2022 — he does not even allege that the defendants were aware of his 1994 injury in August 2022.  For this additional reason, the Court dismisses the Rehabilitation Act claim.

17

Accordingly, the Court dismisses the plaintiff's Seventh Cause of Action in its entirety.

## IV.   Truth in Lending Act Claim (Eighth Cause of Action)

The plaintiff's claim under the Truth in Lending Act relates solely to the TRS's pension award in approximately 2017.  (*See* ECF No. 1 ¶¶ 33, 69–71.)  The Truth in Lending Act ("TILA") imposes a one-year statute of limitations on monetary damages claims for private actions.  *In re Residential Cap., LLC*, 513 B.R. 856, 867 (Bankr. S.D.N.Y. 2014) (first citing 15 U.S.C. § 1640(e); and then citing *Grimes v. Fremont Gen. Corp.*, 785 F.Supp.2d 269, 285 (S.D.N.Y.2011)).  "[A]lleged continuing failure to provide TILA disclosures is not a 'continuing violation' for purposes of the one-year statute of limitations."  *Van Pier v. Long Island Sav. Bank, F.S.B.*, 20 F. Supp. 2d 535, 538 (S.D.N.Y 1998) (collecting cases).  "[T]he plain language of Section 1640(e) and the cases interpreting that statute indicate that, where a damages claim under TILA is time-barred, the Court is prohibited from" addressing the merits of the claim.  *McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101, 2007 WL 2702348, at *12 (E.D.N.Y. Sept. 12, 2007).  Because the plaintiff filed this action on October 2, 2024, seven years after 2017, this claim is also time-barred.

Accordingly, the Court dismisses the plaintiff's Truth in Lending Act claim — his Eighth Cause of Action — in its entirety.

## V.   First Amendment Claim (Tenth Cause of Action)

To state a claim for First Amendment retaliation, the plaintiff must allege, "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) (citation omitted).  The plaintiff "has the initial burden of showing that an improper motive played a substantial part in

18

defendant's action." *Id.* at 288 (first citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); and then citing *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994)).

The Union Defendants argue, in part, that the complaint "is devoid of specific allegations establishing a causal connection between any of [the plaintiff's] conduct and adverse actions suffered at the hands of Union Defendants." (ECF No. 17-2 at 21–22.)  The City Defendants did not brief this claim.

### a.      City Defendants

A First Amendment retaliation claim against a municipality is brought under Section 1983.  *See, e.g.*, *Agosto*, 982 F.3d at 97; *Mule*, 797 F. Supp. 3d at 43.  The Court therefore construes the First Amendment allegations against the City Defendants as a claim brought under Section 1983 for a violation of the First Amendment.  *See Fowlkes*, 790 F.3d at 387 (citation omitted).  As with the Section 1983 claim discussed in Section I.b, the plaintiff does not identify any policy, practice, or custom giving rise to the First Amendment claim as required under *Monell*.  *See* 436 U.S. at 694.  These allegations are insufficient to plead a First Amendment claim against a municipality.  *See Mule*, 797 F. Supp. 3d at 43 (dismissing First Amendment retaliation claims against the DOE under *Monell* due to the absence of the "execution of a government's policy or custom") (first citing *Monell*, 436 U.S. at 694; and then citing *Anilao*, 27 F.4th at 873–74).

Additionally, as described in Section 1.a, any Section 1983 claim for First Amendment retaliation based on conduct that occurred more than three years before this action was filed is barred by the three-year statute of limitations.  *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (three-year statute of limitations applies to claims arising in New York under 42 U.S.C. § 1983).  Moreover, each of the allegedly retaliatory events was a discrete action, not

19

an "ongoing policy" of retaliation.  *See Harris*, 186 F.3d at 250; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'").

### b.   Union Defendants

Assuming that the plaintiff can bring a First Amendment action against the Union Defendants, the Court agrees with the Union Defendants that the complaint lacks any facts establishing "a causal connection between the protected speech and the adverse action." *Scott*, 344 F.3d at 287.  The plaintiff makes only vague and conclusory allegations, and "a formulaic recitation of the elements of a cause of action will not do." (*See* ECF No. 1 ¶¶ 76–77.) *Twombly*, 550 U.S. at 555.

Accordingly, the Court dismisses the plaintiff's First Amendment claim — his Tenth Cause of Action — in its entirety.

## VI.   UFT Mailing and Email Allegations

The plaintiff asserts that on unspecified dates, the Union Defendants engaged in "racial discriminatory and retaliatory behavior" by changing his address without authorization and neglecting to provide him with notices of meetings.  (ECF No. 1 ¶¶ 35–36, 44.)  It is not clear from the complaint which claims these allegations fall under but, as explained above, these allegations are conclusory and do not state a claim.

## VII.   Remaining State and City Law Claims

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455

F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)).  The Court dismisses all the

federal claims over which it has original jurisdiction, and declines to exercise supplemental

jurisdiction over the plaintiff's remaining state and municipal law claims — his Third, Fourth,

Fifth, and Ninth Causes of Action — alleging violations of the NYSHRL and NYCHRL, and an

unconscionable pension contract.  *See Kolari*, 455 F.3d at 123 ("Plaintiffs' federal-law claims

were eliminated on a motion to dismiss, prior to the investment of significant judicial resources,

and we can discern no extraordinary inconvenience or inequity occasioned by permitting the

claims to be refiled in state court where they will be afforded a 'surer-footed reading of

applicable law.'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))).

## VIII.  Leave to Amend

The plaintiff has not requested leave to amend, but in light of the plaintiff's *pro se* status,

the Court addresses it *sua sponte*.  Although leave to amend a complaint should be freely given

"when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se*

plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated," *Clarke v. Leading Hotels of the World, Ltd.*, No.

15-CV-8, 2015 WL 6686568, at *5 (S.D.N.Y. Oct. 29, 2015) (quoting *Gomez v. USAA Fed. Sav.

Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted)), "it is

within the sound discretion of the district court to grant or deny leave to amend."  *Broidy Cap.

Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98,

105 (2d Cir. 2018)).  First, leave to amend is not warranted when the "problem with [the

plaintiff's] cause[] of action is substantive" and "better pleading will not cure it."  *Cuoco v.

Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  As explained above, the "problem with" nearly all

of the plaintiff's allegations "is substantive" because they are time-barred, so "[r]epleading

would . . . be futile." *Id.* Second, the plaintiff did not oppose the defendants' motions to dismiss — despite numerous extensions of time and reminders — and has not requested leave to amend. Accordingly, to the extent that the plaintiff's claims are not time-barred, the Court denies leave to amend because the plaintiff did not respond to the defendants' motions to dismiss and has not "engage[d]" with their arguments. *Abreu v. Fairway Mkt. LLC*, No. 17-CV-9532, 2018 WL 3579107, at *1 (S.D.N.Y. July 24, 2018) (denying leave to amend because "failure to meaningfully engage with the [d]efendants' arguments amounts to a waiver of [the plaintiff's] opportunity to respond") (citing *Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012)); *see also Clarke*, 2015 WL 6686568, at *5 (denying leave to amend *sua sponte* in part because the plaintiff did not oppose the motion to dismiss).

## CONCLUSION

For the reasons stated above, the defendants' motions to dismiss the plaintiff's federal claims are granted, and the Court declines to exercise jurisdiction over the plaintiff's state and city law claims. The plaintiff's complaint, filed *in forma pauperis*, is dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment dismissing the case and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       February 24, 2026

23